1983 Form

# In the United States District Court
# For the Northern District of Alabama

03 DEC -8 PM 4:__

U.S. DISTRICT COU
N.D. OF ALABAMA

Coy Patrick Crowe
_____

CV-03-PT-3264-M

(Enter above the full name(s) of the
plaintiff(s) in this action)

v

Ala. Dept. of Corr.; Warden Hooks; Deputy Warden Garrett Classification Specialist Davis; Lt. Richie; Lt. Sanders; Sgt. Malone ; Sgt. Howard; Sgt. Graves; Sgt. Brown; COI Puckett; COI Walker; COI Harris; unknown John Does.

(Enter above full name(s) of the
defendant(s) in this action)

I.   Previous lawsuits

A.   Have you begun other lawsuits in state or federal court(s) dealing with the same facts involved in this action or otherwise relating to your imprisonment?   Yes (X)   No ( )

B.   If your answer to A. is "yes", describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuit(s) on another piece of paper, using the same outline.)

1.   Parties to this previous lawsuit

Plaintiff(s): Coy Patrick Crowe

Defendant(s) AL Dept. of Corr., et. al.

2.   Court (if Federal Court, name the district; if State Court, name the county)

Northern District

3.   Docket Number 01-BU-2990-M

4.   Name of judge to whom case was assigned   U.W. Clemon

## 1983 Complaint

1.) The Defendants assaulted, threatened, menaced, harassed, humiliated and punished Plaintiff in retaliation for his making a complaint of excessive use of force to St. Clair Prison officials, and subsequently filing a 1983 lawsuit over the excessive use of force at St. Clair Prison.

2.) In July 2000 Plaintiff was transferred from level 6 Prison W.E. Donaldson to level 5 Prison St. Clair, approved by the Prison Officials at both Prisons, and by the Central Review Board of the Department of Corrections in Montgomery, AL, as appropriate placement for Plaintiff.

3.) No discussion occurred between the parties in paragraph 2.) prior to Plaintiff's complaints of excessive use of force that foreclosed Plaintiff's placement in the St. Clair Population.

4.) Statements and actions by St. Clair officials prior to Plaintiff's complaints of excessive use of force demonstrated their intentions of eventually placing Plaintiff in St. Clair Population.

5.) Defendants refused Plaintiff's placement in St. Clair Population because of his complaints of excessive use of force.

6.) Defendant Davis told Plaintiff at his 2001 Progress Review that an inmate listed as an enemy of Plaintiff's had transferred into St. Clair, but Deputy Warden Garrett and himself were going to transfer Perry (the enemy) so Plaintiff could go to Population.

7.) Inmate Perry was shortly thereafter transferred by Garrett and Davis so Plaintiff could be placed in St. Clair Population.

8.) Garrett stated to Plaintiff at a later Segregation Review Board, "We transferred Perry to Donaldson, so keep your nose clean so we can let you go to Population'."

9.) Plaintiff received no disciplinary reports from July 1999 until March 2003.

10.) In June 2001 Defendants Garrett and Davis reduced Plaintiff's custody from Close to Medium. Inmates can be released into the St.Clair prison population only if their custody is less than Close.

11.) Defendant Garrett stated to Plaintiff at a Segregation Review Board meeting that he, "... wanted to observe (Plaintiff) a little while longer..." before letting him out (into population).

## Count I

12.) Plaintiff hereby adopts and incorporates Paragraphs 1. through 11. of this complaint herein by reference thereto.

13.) Defendant Davis acquiesced in using his position in Classification to aid and further Defendant Garrett's retaliation against Plaintiff.

14.) After receiving notice of Plaintiff's civil action Defendants Garrett and Davis began using Plaintiff's security level (6) as a pretext for not placing Plaintiff into the St.Clair prison population.

15.) Plaintiff was eligible for a security level reduction to 5 and was not considered and not recommended for it in retaliation.

16.) In May of 2002 Defendants Garrett and Davis carried out what they knew to be a sham transfer process for Plaintiff, over Plaintiff's objections.

17.) When it had became clear to Plaintiff that Defendant Garrett was going to refuse to allow Plaintiff into the St.Clair prison population, Plaintiff began requesting Defendants contact the administrators at Donaldson Prison to work out a transfer back to there for him where security level 6 is not an obstacle for entry into the prison population.

18.) Instead of contacting the administrators at Donaldson Prison to

work out a transfer back to Donaldson for Plaintiff, which is mandatory when enemies are known to be at the prison Defendants wish to transfer Plaintiff to, they simply sent a recommendation of transfer directly to the Central Review Board knowing and intending the transfer would be denied.

19.) In recommending a transfer to the Central Review Board the recommendation form must contain reasons why such a transfer would be appropriate when the inmate has enemies listed at the receiving prison.

20.) Although Defendants Garrett and Davis had caused two inmates listed as Plaintiff's enemies to previously be transferred to Donaldson prison they made no statement on the recommendation ▬ as regards Plaintiff's enemies at Donaldson.

21.) Defendants Garrett and Davis knew that omission must result in the Central Review Board's denying the transfer.

22.) The Central Review Board denied Plaintiff's transfer and wrote on the form, "What about his enemies?"

23.) Defendants Garrett and Davis intended the transfer to be denied for the purpose of retaining Plaintiff at St. Clair Prison where they could prevent his entry into a prison population and exert pressure on him to dismiss his civil action.

24.) Defendants Garrett and Davis demonstrated their knowledge of the procedures to obtain a transfer to Donaldson prison for Plaintiff one year later, as discussed later in this complaint.

25.) The allegations and factual contentions are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## Count II

26.) The Plaintiff hereby adopts and incorporates Paragraphs 1. through 25. of this complaint herein by reference thereto.

27.) Plaintiff received physical abuse, threats and harassment from St.Clair prison guards in retaliation for his complaints of excessive use of force.

28.) Defendant Walker took Plaintiff out of his cell and ordered an inmate barber to cut all of Plaintiffs hair off. Inmates are not required to have all hair cut off, nor was it normal practice at St.Clair at the time.

29.) Defendant Walker stood in front of Plaintiff in a menacing manner as Plaintiff sat for the hair cut, and stated to Plaintiff, "Get my job like you done Fletcher."

30.) Plaintiff warned Defendant Walker if he beat Plaintiff up he would put him in federal court. To which Defendant Walker replied, " Fuck the federal courts."

31.) Plaintiff, after all hair being cut off, returned to his cell without further incidence.

32.) Plaintiff was confronted the next morning as he came out to report the incident to the Segregation Review Board by Defendant Harris at the G and H cubicle of building H.2 and warned that if he reported the incident with Walker Plaintiff would "see a hard time".

33.) Plaintiff reported the Walker incident at that days Board meeting, and reported the Harris incident and subsequent harassment to Warden Hooks in a letter mailed 1st class

34.) After Plaintiff returned from reporting the Walker incident Harris. came out of the cubicle and into Plaintiffs cell block and stood staring menacingly at Plaintiff.

35.) Defendant Harris and former guard Cedric Botwell began

the practice of stopping and staring into Plaintiff's cell during cell checks without speaking.

36.) Officer Botwell was subsequently fired and indicted for threatening an inmate with bodily harm if the inmate did not pay up on drugs he owed for.

37.) Defendant Puckett slammed a steel tray door on Plaintiff's hand and stated, "Bitch, tell that, you're telling everything else."

38.) None of the Defendants in Paragraphs 26. through 37. self-reported the incidents they were involved in.

39.) The allegations and factual contentions herein are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## Count III

40.) The Plaintiff hereby adopts and incorporates Paragraphs 1. through 39. of this complaint herein by reference thereto.

41.) On March 19, 2003 Plaintiff was attacked by an inmate while waiting in a walk-pen with other inmates to see the Segregation Review Board.

42.) Defendant Malone used his position as investigator to have Plaintiff issued a false disciplinary report for assault on the inmate that attacked Plaintiff; prevented the inmate from receiving a disciplinary report who attacked Plaintiff; and later as Sgt., advocated for the inmates release to St.Clair population who attacked Plaintiff (Defendants Garrett and Davis released him one week after attacking Plaintiff); and then Defendant Malone appointed himself as co-Hearing Officer at Plaintiff's disciplinary hearing on the assault charge and prevented

Plaintiff from receiving a fair hearing in retaliation for Plaintiff's complaints of excessive use of force.

43.) The Plaintiff asserts a violation of his rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, which protects convicted prisoners from the deprivation of liberty interests that implicate basic necessities of life; and under a state created right in Admin. Reg. 403, II., which states, due process is necessary if the violation can result in confinement to segregation.

44.) The liberty interest of critical import at stake in the following Disciplinary Hearings is food. Plaintiff was sentenced to a total of one hundred and eleven (111) days on a restricted diet of approximately one-half the ordinary diet of inmates in the St.Clair prison population, administrative segregation, and protective custody. Such punishment is not authorized by the Dept. of Corrections regulations or by state law.

45.) At Plaintiff's disciplinary hearing on April 6, 2003 for assault on an inmate the Hearing officer, Defendant Brown, violated Plaintiff's due process in the following ways.

   I.) Admin. Reg. 403, II., B., states in part: " The inmate must be permitted to present documentary evidence.
     (a) Plaintiff requested in his written statement (page 4) the following be made available at his hearing —
       1.) the photos of Plaintiff's injuries taken by Sgt. Malone; and,
       2.) Statements by the inmate of his acknowledging or denying attacking Plaintiff contained in any Incident Reports or other written documents.
     (b) Defendant Brown ignored Plaintiff's requests.

II.) 403, II., C., states in part: "The inmate must be permitted to call a reasonable number of witnesses ..."

(a.) Plaintiff called Nurse Chatman as a witness, but when she appeared Hearing Officer Brown asked her his one question, "Were you present when this incident occurred?" Her response was "No" and Brown dismissed her.

(b.) Plaintiff requested Brown to read Plaintiff's written questions for Nurse Chatman for relevancy before dismissing her but he refused and drew an X across the questions for Nurse Chatman and threw them away.

(c.) Plaintiff had been told that as Nurse Chatman was treating the inmate who attacked Plaintiff she asked him for her paperwork, "What happened to you?", and the inmate replied, "I got at a crackers ass."

(d.) One of Plaintiff's written questions for Nurse Chatman was, "Did Roger Bivins tell you he attacked me?"

III.) 403, IV., states in part: "The hearing should be held within ten (10) working days after the inmate has been served with the charges."

(a.) After the 10-days had expired Plaintiff was served a Postponement Notice.

(b.) Deputy Warden Garrett reviews and approves or disapproves the verdict or sanctions of all disciplinary proceedings.

(c.) Garrett's policy is to disapprove of any disciplinary proceeding where the hearing was not held within 10-days of the charges being served or where a Postponement Notice was not served on the inmate prior to the 10-days expiring.

(d.) Despite Garretts normal policy of disapproving disciplinaries that were not ~~tried~~ within 10-days of the changes being served he approved the guilty verdict of Plaintiff's disciplinary in retaliation for the civil action.

IV.) 403, IV., G., states in part: "Allow the inmate to read his prepared written statement to the Hearing officer ..."

(a.) Hearing officer Brown refused to allow Plaintiff to read his written statement and refused to read it himself, denying Plaintiff consideration of all the evidence.

II.) 403, IV., J., states in part: "Dismiss everyone from the hearing room, consider the evidence..."

(a.) Hearing officer Brown allowed Sgt. Malone to remain in the room and participate in the deliberations. Plaintiff could clearly see Malone and Brown through the window passing Plaintiff's written questions and/or statement back and forth as they sat across the desk from one another.

(b.) When Plaintiff re-entered the room he objected to the participation of Malone in the deliberations on the grounds that it violates the regulations as Malone was called as one of Plaintiff's witnesses (403, III., B. — "... witnesses may not serve as Hearing officer"), Brown was suppose to "Dismiss everyone from the hearing room...", Malone participated in the investigation of the charges as he took photos of Plaintiff's injuries and gathered other evidence, and he is a Defendant in Plaintiff's civil action.

(c.) Brown at first denied Malone participated until Plaintiff stated he was watching through the window. Then Brown stated it did not matter because Malone

did not provide any relevant testimony.
(d.) Malone then spoke for himself and said, " Let
me tell you something. I dont give a fuck about this
disciplinary. I dont give a fuck about the rules. I
make my own rules."
II.) Hearing officer Brown failed to make any Findings of Fact
(See #19. on the Disciplinary Report) on the following :
        (a.) that he believed or disbelieved Oscar Corbins testimony
        ~~that the~~ other inmate initiated the altercation by Kicking
        Plaintiff ( See #16. on the Disciplinary Report) ;
        (b.) why he disbelieved Plaintiff's testimony that the other
        inmate initiated the altercation by Kicking Plaintiff ;
        (c.) that he believed or disbelieved Oscar Corbins testimony
        that one of Plaintiff's ~~cuffs~~ came loose on its on after
        the altercation began ( See #16. on the Disciplinary Report) ;
        (d.) why he disbelieved Plaintiff's testimony that one of
        his cuffs came loose on its on after the altercation
        began ; No evidence contradicted Corbins or Plaintiffs testi-
        mony ( See #16. on the Disciplinary Report) ;
        (e.) who initiated the altercation. 403, III., J., states in
        part : " The Hearing officer may determine that the **violation**
        charged has not been proven but that a lesser included
        similar offense has been proven. A lesser included violation
        is defined as being a violation which some but not all
        of the elements of proof of the originally changed violation
        are present. "
        403, Annex B, 35., is the lesser included offense of
        assault where the element of which inmate initiated the
        altercation is missing : " <u>Fighting Without A Weapon</u> –

Two or more individuals engaging in mutual combat during which combat the principal aggressor cannot be determined.

The Arresting Officer testified he "didn't see how it started" (See #15. on the Disciplinary Report), and the Plaintiff and witness Oscar Corbin provided uncontroverted testimony that the other inmate initiated the altercation by kicking Plaintiff (See #16. on the Disciplinary Report).

A finding that Plaintiff initiated the altercation is a necessary element before he can be found guilty of assault.

VII.) Hearing officer Brown improperly relied upon for the Basis for Finding of Fact (See #20. on the Disciplinary Report) the following (a.) that the Plaintiff "freed himself from the handcuffs" based on the Arresting Officers testimony. The Arresting officer never testified as to his knowledge of how one of Plaintiff's came loose (See #15. on the Disciplinary Report - "I didn't see how it started"; see also #16. of Questions For The Arresting Officer - "Did anyone tell you I somehow got my cuff loose on purpose? No.") (b.) that the other inmate "behaved in a defensive manner" based on the Arresting Officers testimony. The Arresting Officer never gave any explaination what the so-called defensive manner was despite Plaintiff's asking him if it was defensive manner because the inmate was biting Plaintiff's finger.

VIII.) There was no evidence to support Plaintiff being found guilty of assault:

(a.) Assault On Another Inmate and Fighting are two distinctly different charges, with the former being more

serious and requiring a higher standard of evidence,
i.e. a definitive determination of who initiated the alter-
cation.

VIIII.) Defendant Malone appointed himself as co-Hearing
Officer for the purpose of ensuring Plaintiff was found
guilty and received maximum punishment in retaliation.

X.) Plaintiff was found guilty and sentenced to a restricted
diet of 1½-meals per day for 45-days in Isolation;
the loss of all personal property except for legal and
writing materials for 45-days; restriction from receiving
his periodical subscriptions for 45-days; restriction of his
store, phone, visitation, and snack-shop privileges for 90-
days; and a referral for a custody increase.

XI.) Admin. Reg. 403, Annex A, gives a list of punishments
an inmate may receive on the finding of guilt after his
disciplinary hearing:

<u>Authorized Sanctions</u>

1.) Loss of a portion or all good time the inmate has
earned;
2.) Confinement to Segregation;
3.) Recommend custody review;
4.) Loss of any and all privileges up to 90-days.

(a.) Plaintiff was deprived of food.

46.) The allegations and factual contentions herein are likely to
have evidentiary support after a reasonable opportunity
for further investigation or discovery.

## Count IV

47.) The Plaintiff hereby adopts and incorporates Paragraphs 1. through 46. of this complaint herein by reference thereto.

48.) On April 7, 2003, the day after the above disciplinary proceeding, Defendant Malone ordered officer Santa Maria to cut off all of Plaintiffs hair. Cutting off all of an inmates hair was not normal practice at the time nor is it required of inmates per regulation.

49.) Defendant Malone struck Plaintiff with his closed fist on the side of Plaintiffs face while he sat cuffed behind his back submitting to his hair being cut off.

50.) Plaintiff was forced backwards by Malones blow into the hair clippers held by officer Santa Maria cutting his back.

51.) Plaintiff was knocked into the floor by Malones blow.

52.) Lt. Richie and other officers present knew Malone intended to strike Plaintiff and did not attempt to prevent it.

53.) Plaintiffs face was swollen, bruised, and painful for 2-weeks after Malone struck him.

54.) Plaintiffs shoulder that hit floor after struck by Malone was sore and painful limiting movement of right arm for 2½ months.

55.) Plaintiff felt anxious, fearful, humiliated, and emotional and mental distress as a result of Malones attack upon him.

56.) In the days following Malones assault on Plaintiff, Defendants Malone, Richie, Howard, Sanders, and possibly others, conspired to cover-up and prevent Plaintiff from reporting the assault by
(a) making false reports on the incident,
(b) issuing Plaintiff a false disciplinary report,
(c) throwing Plaintiffs notes to their superiors away,
(d) refusing Plaintiffs requests for photos of his injuries be

made,

    (e) by removing Plaintiff's name from the list to see the Segregation Review Board the day after Malones assault, and,

    (f) stealing Plaintiff's written statement off Capt. Vanners desk.

57.) On April 8, 2003 Defendants Malone, Richie, and Howard met with Defendant Davis and requested he do a real transfer effort to remove Plaintiff from St. Clair "before they killed him".

58.) Davis responded to their request by contacting the Classification Division and the Administrators at Donaldson Prison and held talks to facilitate Plaintiff's transfer to Donaldson.

59.) After obtaining the agreement from Donaldson prison officials to trade prisoner for Plaintiff, Defendant Davis then forwarded a transfer recommendation with a statement of the agreement with Donaldson prison officials to the Central Review Board of the Dept. of Corrections for final approval.

60.) The Central Review Board approved Plaintiff's transfer, and would have done so one year earlier when Defendants Davis and Garrett conducted what they knew and intended to be a sham transfer to cause Plaintiff to be retained in the lockup unit at St. Clair prison in retaliation, as described in Count I of this complaint.

61.) The allegations and factual contentions herein are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## Count V

62.) The Plaintiff hereby adopts and incorporates Paragraphs 1. through 61. of this complaint herein by reference thereto

63.) On April 16, 2003, Lt. Sanders interjected himself into the disciplinary proceedings of Plaintiffs and stated to him that he wanted Plaintiff to buck so he could beat his ass, and that it was personal between him and Plaintiff because Malone was his friend.

64.) Defendant Sanders taunted and threatened Plaintiff from the beginning of the disciplinary hearing causing Plaintiff to opt to plead guilty to avoid a confrontation with Defendant Sanders.

65.) Defendant Sgt. Graves, Hearing Officer, never made any effort stop Defendant Sanders taunts and threats to Plaintiff while he conducted the hearing.

66.) Defendant Graves also refused to accept and attach Plaintiffs written questions to the Arresting Officer with the disciplinary report.

67.) The fact Plaintiff brought written questions to the hearing is evidence he had not intended to plead guilty, but did so to avoid a physical assault on himself by Defendant Sanders.

68.) Plaintiff was cuffed behind his back and wore leg shackles, but before he could leave the hearing room to return to his cell Defendant Sanders came out of his chair and tapped Plaintiff twice on his shoulder in an attempt to provoke Plaintiff.

69.) Defendant Sanders statements made it obvious to Sgt. Graves that Sanders animus towards Plaintiff was motivated by Plaintiffs initiating an investigation of Sgt. Malones assault upon him, yet Graves acquiesed in Sanders disruption of Plaintiffs hearing and animus towards Plaintiff and sentenced Plaintiff to the maximum

sanction of restricted diet, 45-days.

70.) Plaintiff asserts the guilty plea was involuntary because
of the threatening atmosphere of the proceeding giving
him reason to fear bodily harm if the hearing was con-
tinued. Plaintiff initially plead not guilty and circled
not guilty on the disciplinary report to so indicate.
But when Defendant Sanders for all intents and purposes
became the central focal point with his threats and taunts
to Plaintiff, he felt compelled to plead guilty and re-
turn to his cell as quickly as possible to avoid being
physically assaulted in retaliation for reporting Malones
assault on himself.

71.) Plaintiff was sentenced to a restricted diet of 1½-meals
per day for 45-days in Isolation; loss of all personal pro-
perty except for legal and writing materials for 45-days;
restriction from receiving his periodical subscriptions for
45-days; restriction of his store, phone, visitation, and
snack-shop privileges for 45-days.

72.) The allegations and factual contentions herein are likely to
have evidentiary support after a reasonable opportunity for
further investigation or discovery.

## Count VI

73.) The Plaintiff hereby adopts and incorporates Paragraphs 1,
through 72, of this complaint herein by reference thereto.

74.) On May 6, 2003, Defendant Sanders continued his harassment
of Plaintiff and denied him due process in a disciplinary
proceeding by refusing to list Plaintiffs requested witnesses
and documentary evidence when he served Plaintiff with
a disciplinary report.

75.) I.) Admin. Reg. 403, III., F., states in part: "The serving officer ... will not refuse to list any witnesses desired by the inmate."

(a.) Plaintiff requested Defendant Sanders list the two inmates that had occupied that Isolation cell prior to Plaintiff. Plaintiff supplied Sanders with the first name and cell location of one, and requested he check the cell-log in the Segregation office for the other.

(b.) Defendant Sanders refused to list either and when Plaintiff began to write in his witness requests himself was ordered by Sanders to give him the disciplinary report, on which Sanders marked through what Plaintiff had written and wrote, "Refused to Sign", on it.

(c.) Defendant Sanders also refused to list Plaintiffs documentary request on the disciplinary report, which was the Cell Inspection Forms for the two inmates that had occupied that Isolation cell prior to Plaintiff.

II.) As a result of Defendants Sanders refusing to list either Plaintiffs witnesses or documentary evidence, Hearing Officer Graves refused to make the same available at Plaintiffs hearing and he was found guilty. Plaintiff obtained the full name of one of his witnesses and supplied it to Defendant Graves when Plaintiff entered the hearing room (the Seg. office) by looking at the large plexiglass board hanging on the wall of the Seg. office on which is written in cell-location order the full names, prison numbers, and custody levels of all inmates in the Segregation Unit. However, Defendant Graves refused to call this witness (Jason Chatman, H2H-4 cell).

III.) Plaintiff was sentenced to a restricted diet of 1½-meals per day in Isolation for 21-days; the loss of all personal property except for legal and writing materials for 21-days; restriction from receiving his periodical subscriptions for 21-days; and restriction of store, phone, visitation, and snack-shop privileges for 30-days.

76.) The allegations and factual contentions herein are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## Count VII

77.) Plaintiff hereby adopts and incorporates Paragraphs 1. through 76. of this complaint herein by reference thereto.

78.) Warden Hooks was repeatedly informed about the retaliatory acts against Plaintiff by his subordinates but refused to take remedial action, and allowed Plaintiff to be harassed, humiliated, punished, and physically assaulted by guards at St. Clair Prison.

79.) The allegations and factual contentions herein are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

80.) Plaintiff sues all Defendants in their personal capacities, except for the Department of Corrections.

81.) Defendants violated Plaintiff's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution, the Alabama Constitution, and state and federal civil and criminal statutes.

82.) Defendants violated Plaintiff's due process rights in his disciplinary hearings in retaliation for his complaints of

excessive use of force

83.) Plaintiff asserts claims of violations of his due process in his disciplinary hearings independent of retaliation as cause.

84.) Plaintiff respectfully prays for the following relief:

1.) An Injunction ordering Defendants to feed all prisoners the same amount of food.

2.) An Injunction ordering Defendants to enforce the policies and procedures already in place to prevent the violation of Plaintiff's civil rights.

3.) An Injunction ordering Defendants to put in place procedures where inmates can register complaints of violations of their civil rights without fear of reprisal.

4.) An Injunction ordering Defendants to expunge the aforementioned disciplinary reports from Plaintiff's prison files and restore Plaintiff to his former status lost due to guilty verdicts in said disciplinaries.

5.) An Injunction ordering Defendants to place Plaintiff in the general prison population at the prison they choose.

6.) For Declaratory relief that Defendants violated Plaintiff's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution, the Alabama Constitution, and state and federal statutes.

7.) For compensatory damages from all Defendants, except the Department of Corrections, in an amount to be proven at trial.

8.) For punitive damages from all Defendants, except the Department of Corrections, in an amount to be

proven at trial.

9.) For the costs of the lawsuit herein, including Plaintiffs reasonable attorney fees if he retains or is appointed counsel.

10.) For such other relief as the court deems proper.

Plaintiff demands a jury trial.

Coy Patrick Crowe
14-D-11
Holman 3700
Atmore, AL 36503

